We are now going to move to Appeal 24-1071, LQD Business Finance, LLC v. AKF, Inc. et al. And we're going to begin with argument from the appellant, Ms. Brunon. No relation. Good morning. May it please the Court. We're here today on two very relatively narrow issues in a case involving my client, AKF, which is a third party, essentially, to a primary dispute between a former employee, Azzedine Rose, who went by Dean Rose, and LQD as his former employer, independent contractor. Some business relationship, which is really irrelevant. The distinction here doesn't really matter for the purposes of this appeal. So we're here on two issues, the first of which is the court, after a bench trial with an advisory jury, imposed a constructive trust against my client after a judgment with no liability. So that's a very narrow issue of law, whether or not the court has the authority, when there's no finding of liability, on either the only two claims that were tried to the jury on behalf of my client, which were a tortious interference with fiduciary duty by interactions with Mr. Rose, and a corresponding unjust enrichment case. Ms. Brunon, before you get to the second issue, I'm a little confused why you're appealing the constructive trust, just from a practical standpoint. Based on the testimony at the trial from your client, CEO, it seems like you don't dispute that the $78,000 belongs to LQD. At trial, my client never had a direct contractual relationship with LQD. I understand that, but does your client dispute that it owes the $78,000? My client does dispute that it was the $78,000, because what he said at trial was that prior to this lawsuit, in order to avoid a lawsuit, you can call it 408, but under one of those sorts of theories, we'll pay you this $78,000. We don't care. I'm paraphrasing here, but it's in the briefs. We don't care what your problem is between you two. We're happy to give this to whomever, but we want to be out of the lawsuit. To your point, Judge St. Eve, the point is that my client doesn't feel like it did anything wrong, that it doesn't owe this money to LQD. Does your client think the $78,000 belongs to AKF, to your client? Yeah, that was an agreement between my client and Mr. Rose for a potential commission. I don't understand this, though. If it's, in effect, an interpleader, and the AKF CEO says, we'll pay it, it doesn't matter to whom, why have they now shifted the position to say that they're not going to make the transfer, regardless of who it goes to? Because during the course of this litigation, they were accused of wrongdoing for the whole thing. They were accused of being in cahoots with Mr. Rose, that somehow this was a conspiracy with Mr. Rose. He shouldn't have done this at all. Under LQD's theory, Mr. Rose didn't even have the authority. Therefore, essentially nullifying any agreement, any commission, that should be paid to Mr. Rose and then on to LQD. So the change of position was a function of the nature of the allegations being brought against your client? Correct. Correct. Hold on. When did, we're talking about, I'm not sure how to pronounce his last name, the CEO is Alex Schwartz? Yeah, you can say Schwartz or Schmartz. Okay. When did he testify that, quote, we decided to hold on to the commission until we knew who does this commission belong to? So we held the commission, et cetera. You know the testimony. When did that happen? That was reflecting a pre-litigation conversation that he had had with Mr. Sreed during the trial. Because that trial, recall that the claims at trial against Mr. Rose, so obviously tried together, were a breach of fiduciary duty. We had the tortious interference. Okay. Did he then, in the trial, if this is recounting a pre-trial position about why we held the money, we didn't pay it to anybody, did he then in the trial explain, but hold on, hold on, that is absolutely not our position today. Our position today is that we, AKF, hold full title to that money and we don't owe anybody one red cent. I don't know that he testified that explicitly about the former part of your question about the $78,000. He for sure testified that we didn't do anything wrong here and we shouldn't be held liable for it. Well, I get that, but the reason I think we're all focused on this is because I thought it was that testimony that in large part led the district court to invoke Illinois law and some of the principles that inform the constructive trust doctrine to impose the constructive trust on the $78,000. That testimony played quite a role in that decision by the district court. And even if I grant you that, the issue here, though, is what authority does the court have? And I want to bring it back to this. Absent a finding of liability, does its equitable powers expand to such an extent that if there's this fundamental, well, he said that earlier prior to the lawsuit that this money should be, he's willing to turn over the money. The point is that under Illinois law, in order for constructive trust to be imposed, it is a remedy for something. And there's no for something here. Was the retirement fund in Smithburg at legal fault? In Smithburg, I don't think the money had actually been paid out. If you read the language of that case, it says, and I believe it says, and had it been paid out to the former spouse, then maybe a constructive trust. I don't think it was actually paid out. No, right. And I think the parallel that's been seen is that it was a state retirement fund or benefit fund or something. They were holding the money and saying, we don't know who to pay it to. We know we owe somebody, but we don't know who to pay it to. And the analogy that's been drawn here is that's precisely what your client's chief executive officer said or in substance what he said. The parallel here isn't perfect because in that situation, it's something that the pensioner paid into with the express purpose of that eventually having a beneficiary and coming back. And then it was the beneficiary fighting. In this case, LQD never paid anything to my client. There was no contractual relationship like what governs a pension. It's a very different situation. I have your client's testimony from the trial. He said, we decided to hold on to the commission, the $78,000 at issue, until we knew who does this commission belong to. So we held the commission. We still hold the commission until somebody tells us whose money this really is. And Judge Connelly relied on that rather heavily in imposing the constructive trust here. In light of that testimony, the jury gave an advisory opinion, since this is equity, that the money should go back to LQD. So I'm back to my same question. Why are you appealing this? If your client has admitted the money doesn't belong to your client, it belongs to somebody else, just tell me who it belongs to and we'll release it. And Judge Connelly, based on having presided over the trial, having reviewed the advisory verdict, said it belongs to LQD. We're going to put it in a constructive trust to go back. Because my client's position is that there is no authority to have done that. In order to make that finding, you have to expand Illinois law past what the rules are for the imposition of constructive trust. So what happens if you win? The constructive trust should not have been put in place. What happens to the $78,000? It doesn't get turned over. So LQD has to sue you then to get the $78,000? No, I don't think that's right. I think they'd be stopped from doing that. But to your question is, would they ever? So you get to keep then the $78,000 that your client said, just tell us who this belongs to? I think that's where Judge Connelly is coming from in equity. In equity, correct. But again, we had a whole trial about this. There was a finding that my client didn't do anything incorrect or wrong. But there was also a finding that the $78,000 doesn't belong to your client. It belongs to LQD. That was after the trial, but it's not part of a cause of action is what I would say. Do you agree as a legal matter, at the very least, that if I think you're definitely right that Smithburg is not the exact same fact pattern. There's no question that way. But that our role is to look at Illinois law and make the best prediction we can, or what some people in legal speak will call an eerie guess, as to where the Illinois court would be on this fact pattern. Do you agree that that's what we need to do? Yes, I think that's right. I think you need to follow the Illinois state law and what the presidents have said. Okay, and so then the question becomes, picking up on where Judge St. Eve was going, we know that's what Judge Kennelly did. And we know he relied upon Smithburg because he talks about it in his opinion. So what's the legal error that he committed in your view? I think the legal error that he committed in our view, and we cite to the case on page 19 of our brief, Affie Products v. Harris Bank, it was as close to a case as we could find with respect to this. So the problem is that it's 1995, and it's a federal court applying Illinois law. And Smithburg is 2000, and it's the state's highest court. Right, but again, I think that's a different case because you're talking about beneficiaries where everybody agrees that it was going to go. It was just which spouse. I think those are very different issues. There's a contractual arrangement. They're beneficiaries. There was a divorce settlement agreement that was breached by the deceased. And the CEO in your client's testimony doesn't bring them closer together? I don't think so. Okay. Thank you, Ms. Brennan. We'll now hear argument on behalf of the appellee. Mr. Smith, welcome back. You've switched sides. Yes. Yes, it was a challenge to remember which table to sit at. So I think on the issue of the imposition of the constructive trust, there's really not a lot here to appeal. In answer to Judge St. Eve's question, I will describe the two parties as not having a lot of love lost. My guess is that Judge Connelly sensed that as well. Yeah. So the issue of the constructive trust does not require any bad acts and does not require any transfers of money. CEO Schwartz specifically said that the money did not belong to AKF and that he was holding the money for the rightful party. Well, today's the day. We know the rightful party that was determined by Judge Connelly, and we're entitled to the issue of the commission that Judge Connelly put in the constructive trust. I want to turn, because there wasn't a lot of discussion of it on the award of the attorney's fees. I want to make sure I get my argument on that. The only way that the determination by Judge Connelly could be overruled is if there was an obvious bad faith on the part of LQD for bringing the cause of action for the violation of the trademark. The issue is whether or not by either a subjective or an objective test as to whether or not LQD was acting in bad faith when they brought their lawsuit, and Judge Connelly went through a significant analysis and came to the conclusion that there was no bad faith on the part of LQD, and as a result of that failure or lack of bad faith, no attorney's fees were to be awarded, which was within the discretion of the court. I don't think there's any question about that. Unless the panel has any other questions, I think we've hit the high marks. Thank you very much, Mr. Smith. Thank you. Ms. Brennan, we'll give you a minute for rebuttal if you've got any final thoughts. Thank you. I appreciate the extra time. Just a real quick question on the attorney's fees. I didn't get to that. I wanted to answer all your questions. So the issue of the attorney's fees are very simple. One, if you're going to make a trade secret claim, the trade secret should at least exist. For instance, there were no output files related to any of these deals. What triggered this case was something called the TGC deal. Even the most cursory examination of their own files would have shown that that deal, the one that triggered all of the rest of this, there was never an output file. If you look at all 63 deals that Mr. Rose eventually sent to my client, of which we funded two, not a single output file even existed, let alone was sent to my client. These are all basic, very standard things. I disagree that the district court gave an extensive analysis. There has to be some legal framework at which point in time during the case, what did you know in the investigation you did, and I don't think that the court applied those factors. Thank you, Ms. Brennan. Thank you, Mr. Smith. The case will be taken under revision.